In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 05-4193

PROTESTANT MEMORIAL MEDICAL CENTER,
INCORPORATED, doing business as
MEMORIAL HOSPITAL,

*Plaintiff-Appellant*,

*v.*

BARRY S. MARAM, in his official
capacity as the Director of the
Illinois Department of Public
Aid and CENTERS FOR MEDICARE AND
MEDICAID SERVICES,

*Defendants-Appellee*s,

and,

CHILDREN'S MEMORIAL HOSPITAL,
ILLINOIS HOSPITAL ASSOCIATION,
KENNETH HALL REGIONAL HEALTH
CENTER, et al.,

*Intervenors-Appellees*.

———————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 05 C 3—**David R. Herndon**, *Judge.*

———————

ARGUED JUNE 7, 2006—DECIDED DECEMBER 6, 2006

———————

Before EASTERBROOK, *Chief Judge*, and RIPPLE and WOOD, *Circuit Judges*.

RIPPLE, *Circuit Judge.*    Protestant Memorial Medical Center, Inc., doing business as Memorial Hospital ("Memorial"), brought this action against Barry S. Maram, the director of the Illinois Department of Public Aid (now known as the Illinois Department of Healthcare and Family Services) ("Department") and a federal agency, the Centers for Medicare and Medicaid Services ("CMS"). The complaint alleged that the defendants had violated the Constitution of the United States and the Medicaid statutes, 42 U.S.C. § 1396 et seq., when they approved and implemented a 2004 amendment to the State of Illinois' Medicaid plan. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

# BACKGROUND

## A.  Facts

Memorial is a hospital located in Belleville, Illinois. It is licensed to provide health care services, including services to Medicare and Medicaid patients. The Medicaid program is a program jointly funded by the states and the federal government. It provides medical assistance to individuals and families whose resources are insufficient to meet the costs of necessary medical services. *See* 42 U.S.C. § 1396 et seq. To qualify for federal matching funds, a state must submit to the Secretary of Health and Human Services ("Secretary") a plan that describes the nature and scope of the state Medicaid program. *See id.* § 1396a(a). If a state's plan satisfies the requirements of the federal

statute and regulations, the Secretary "shall approve" the state's plan. *See id.* § 1396a(b). The Secretary has delegated his authority to approve state Medicaid plans to the regional administrators of CMS, but has retained the final authority to disapprove a state's plan. *See* 42 C.F.R. § 430.15(b) & (c).

In the late 1980s and early 1990s, states began to take advantage of a "loophole" in the Medicaid program that allowed states to gain extra federal matching funds without spending more state money. States desiring to avail themselves of this statutory loophole would make payments to hospitals and collect the federal matching funds. The state would then recoup a portion of the state funding from the hospital, often in the form of a "tax." *See generally Ashley County Med. Ctr. v. Thompson*, 205 F. Supp. 2d 1026, 1031-32 (E.D. Ark. 2002) (noting that "[t]he result [of this] was that the state could draw additional federal matching funds without having to contribute additional state money").

Congress addressed this problem in the Medicaid Voluntary Contribution and Provider-Specific Tax Amendments of 1991, Pub. L. No. 102-234, 105 Stat. 1793 (1991) (codified at 42 U.S.C. § 1396b(w)). Through this legislation, Congress instructed the Secretary to reduce federal matching funds to a state by the amount of any revenue received from a health care related tax that "hold[s] harmless" the health care provider upon whom the tax falls. 42 U.S.C. § 1396b(w)(1)(A)(iii). States still may fund their share of Medicaid expenses by assessing taxes on health care related items, services or providers, as long as the tax is uniform, i.e., "broad-based," and the tax contains no "hold harmless provision." *See id*. § 1396b(w)(1)(A)(ii)-(iii) & (4).

A health care related tax is either a tax that treats providers or purchasers of health care items or services differently from other individuals on whom the tax falls, or it is a tax in which at least eighty-five percent of the tax burden falls on those who provide or purchase health care items or services. *See* 42 U.S.C. § 1396b(w)(3)(A). A health care related tax contains a "hold harmless provision" when it provides some sort of payment to the taxpayer that is tied to the amount of the health related tax paid. *See id.* § 1396b(w)(4). One way a health care related tax will include a "hold harmless provision" is if the tax provides a direct payment to the taxpayer based on either the amount of the tax paid or the difference between the amount of the tax paid and the amount the taxpayer receives as payments under the state's Medicaid plan. *See id.* § 1396b(w)(4)(A). A health care related tax also will include a "hold harmless provision" if payments that the taxpayer receives under the state's Medicaid program are tied to the total health care related tax paid. *See id.* § 1396b(w)(4)(B). Lastly, if the state promises to hold the taxpayer harmless for a portion of the cost of the tax through a direct payment or exemption from the tax, that promise also constitutes a "hold harmless provision." *See id.* § 1396b(w)(4)(C).

On February 3, 2004, the Illinois General Assembly approved legislation that amended the state Medicaid program to impose a tax on health care providers. Under this legislation, hospitals were charged a tax equal to the product of $84.19 times the hospital's "occupied bed days," i.e., the total number of days each hospital bed was occupied by a patient during calendar year 2001. *See* 305 ILCS 5/5A-1, 5/5A-2(a) (West 2004). Another part of this legislation provided adjustments to payments from Illi-

nois to certain hospitals. *See* 305 ILCS 5/5A-12 (West 2004). These adjustments provided payments to the hospitals above the basic rate for inpatient hospital services, including a "Medicaid inpatient utilization rate adjustment." *See id.* These payments were to be funded through the new tax imposed by the legislation.

On February 6, 2004, the Department submitted for approval to CMS a proposed amendment to its state Medicaid plan ("2004 plan amendment"). The object of the amendment was to permit Illinois to receive matching federal funds for the increased payments to certain hospitals anticipated by the 2004 legislation. The Department argued that the payments did not constitute a "hold harmless provision" for the new "occupied bed days" tax under the Medicaid statutes. The net effect of the legislation and the 2004 plan amendment would be to permit Illinois to collect the new tax imposed by the legislation while receiving full federal matching funds for its own increased payments. By its terms, the plan amendment would expire on June 30, 2005.

CMS approved the 2004 plan amendment on December 21, 2004 to cover retroactively the period from May 9, 2004 until June 30, 2005. Under this plan, Memorial would receive payment of $6.6 million, which exceeds the amount of tax it paid to the State of Illinois by $474,308. All payments under the 2004 plan amendment were distributed by April 15, 2005. As noted earlier, the 2004 plan amendment expired by its own terms on June 30, 2005.

**B.  District Court Proceedings**

On January 5, 2005, Memorial filed this action against CMS and Barry S. Maram, Director of the Department

("Director").[1] It sought to block implementation of the 2004 plan amendment. The Second Amended Complaint, the operative pleading, alleges a number of claims. Memorial asserts that the 2004 plan amendment violates the "hold harmless" prohibitions of 42 U.S.C. § 1396a and 42 C.F.R. § 433.68(f) because the payments made to hospitals are correlated positively to the amount of tax paid by the hospitals. *See* R.39 at 5, 10. Memorial further asserts that the 2004 plan amendment provides: payments to hospitals to pay for services to non-Medicaid patients, in violation of 42 U.S.C. §§ 1396a and 1396b; payments to hospitals in excess of their Medicaid costs plus uninsured costs, in violation of 42 U.S.C. § 1396r; and some low-utilization Medicaid hospitals higher payments than high-volume hospitals, in violation of 42 U.S.C. §§ 1396(a)(13)(A), 1396r and sections 1092 and 1923 of the Social Security Act.[2] *Id.* at 10-13. Memorial further alleges violations of its rights to substantive due process, procedural due process and equal protection. *Id.* at 13-16. Memorial also claims that the Department and CMS had violated Memorial's Eleventh Amendment rights by failing to follow applicable federal statutes and regulations when the 2004 plan amendments were submitted

---

[1] Memorial first filed suit against the then-titled Illinois Department of Public Aid. The Department later was dismissed as a defendant and Barry S. Maram replaced it as a defendant in his official capacity as Director. *See* R.72. The defendants include the Director, CMS and the intervenor-defendants, a group consisting of the Illinois Hospital Association as well as a number of individual hospitals located in Illinois. *See* R.27.

[2] Sections 1092 and 1923 of the Social Security Act of 1935 are codified at 42 U.S.C. §§ 1396a and 1396r-4, respectively.

and approved.[3] Finally, Memorial alleges a violation of 42 U.S.C. § 1983 against both CMS and the Director. *Id.* at 17-18.

For each of these alleged violations, Memorial requested the following relief: an order declaring that the 2004 plan amendment submitted by the Department was invalid and void; an order declaring that CMS' approval of the 2004 plan amendment was invalid and void; an injunction preventing the Director from making payments under the amendment; an order that Memorial recover attorney's costs and fees; and "any further orders and relief which the Court deems just and proper." *Id.* at 10-18.

CMS, the Director and the intervenor-defendants moved to dismiss Memorial's complaint for lack of subject matter jurisdiction and, in the alternative, failure to state a claim upon which relief may be granted. R.84 at 1-2. The district court first addressed the defendants' claim that Memorial lacked subject matter jurisdiction. The district court first focused on the mootness doctrine. It noted that the relief requested by Memorial in its complaint included an order declaring that the 2004 plan amendment is invalid and void, an order declaring that CMS' approval of the 2004 plan amendment is invalid and void, and an injunction preventing the Director from

---

[3] It is unclear what rights Memorial claims be conferred upon it by the Eleventh Amendment. The Eleventh Amendment has not been understood to confer any rights on private entities, such as Memorial. The Eleventh Amendment is understood to confirm the proposition that states, as sovereigns in our federal system, will not be held amenable to suit in federal court without their consent. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996).

making payments pursuant to the 2004 plan amendment. *Id.* at 6-7. The district court concluded that these "requests are moot" because the 2004 plan amendment is no longer in effect. Furthermore, because the Director already had distributed all the funds under the 2004 plan amendment, an injunction prohibiting distribution would be of no effect. *Id.* at 7.

Next, the district court determined that Memorial lacked standing because it had not alleged a "distinct and palpable injury sufficient" to grant jurisdiction. *Id.* at 8. The district court stated that the 2004 plan amendment improved Memorial's economic condition and that any 2004 plan amendment that would provide more of an economic benefit to Memorial "exists purely in the hypothetical," which is not sufficient to grant jurisdiction. *Id.* at 9.

In the alternative, the district court held that Memorial had failed to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). The court held that no right was conferred upon Memorial by the Medicaid Act. Therefore, Memorial could not bring a claim under § 1983. *Id.* at 10-12 (distinguishing *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498 (1990), and *Methodist Hospitals, Inc. v. Sullivan*, 91 F.3d 1026 (7th Cir. 1996)).

The court next examined whether the Eleventh Amendment barred a claim against the Director in his official capacity. The court noted that the relief sought by Memorial, although characterized as "prospective" relief enjoining the Director from making payments to health care providers under the approved plan, actually would not be "prospective" because those payments already had been made. *Id.* at 12-13. Because the relief sought "cannot

properly be characterized as prospective," the exception to the Eleventh Amendment found in *Ex Parte Young*, 209 U.S. 123 (1908), was inapplicable. *Id*. at 13. The court therefore held that claims against the Director should be dismissed for failure to state a claim because of the State's sovereign immunity.

The court also held that CMS was immune from Memorial's suit. The district court recognized that a § 1983 action cannot be brought against federal actors acting under the color of federal law. Such an action can only be brought if the federal actor is found to have acted under the color of state law. *Id.* The district court recognized that Memorial's theory was that CMS "conspired" with Illinois officials to pass the 2004 plan amendment, and thus acted under the color of state law. *Id.* at 14. However, the court stated that CMS undertook its process of approving the 2004 plan amendment under federal regulations and did not act under state law even when acting jointly with state officials. *Id*. Additionally, there was no suggestion that CMS conspired with Illinois to "deny [Plaintiff of its] constitutional rights." *Id.* (brackets in original). Therefore, the court held that CMS could not be sued under § 1983 and that Memorial's claims against CMS should be dismissed for failure to state a claim upon which relief can be granted.

## II

### DISCUSSION

The defendants submit that Memorial lacks standing or, in the alternative, that the case is moot. Both standing and mootness are aspects of the concept of justiciability. *See Smith v. Boyle*, 144 F.3d 1060, 1063 (7th Cir. 1998). Because

the nature and scope of these doctrines are issues of law, our review is de novo. *See Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485, 489 (7th Cir. 2004).

Mootness is one of the concepts that comprise the threshold issue of justiciability. *See Wernsing v. Thompson*, 423 F.3d 732, 745 (7th Cir. 2005). Mootness ensures that the federal courts remain faithful to the case or controversy limitation imposed by Article III of the Constitution by refraining from pronouncements on legal questions that do not affect existing controversies between parties before the court. As we have stated, "federal courts may not give opinions upon moot questions or abstract propositions." *Id.* at 744 (quoting *Worldwide St. Preachers' Fellowship v. Peterson*, 388 F.3d 555, 558 (7th Cir. 2004)). For the reasons that we shall elaborate in the following paragraphs, Memorial's claims are barred by the doctrine of mootness.

The 2004 plan amendment has now expired; all funds under the 2004 plan amendment have been distributed. Memorial's complaint sought only declaratory relief that the 2004 plan amendment was unlawful and an injunction barring the Director from distributing funds under the plan amendment. It sought no affirmative relief requiring that the district court order the state to develop a new plan.

This case, therefore, is similar to *James Luterbach Construction Co., Inc. v. Adamkus*, 781 F.2d 599 (7th Cir. 1986). In that case, a construction company sought only a declaratory judgment that a municipality improperly granted a construction contract to build a wastewater treatment plant to its competitor and an injunction barring the award of the contract and payment to the competitor. While the case was pending, construction on the treatment plant

was completed. This court noted that, in light of that completion, "[b]ecause a declaratory judgment and an injunction cannot afford [the plaintiff] relief . . . [its] suit is moot." *Id.* at 602. The construction company, like Memorial, did not seek monetary relief before the district court. Without such a request for monetary relief, "[t]he relief plaintiff[] seek[s] is valueless at this . . . stage of proceedings." *S. E. Lake View Neighbors v. Dep't of Hous. & Urban Dev.*, 685 F.2d 1027, 1037 (7th Cir. 1982).

Memorial nevertheless submits that its claim is not moot because of an exception to the mootness doctrine for cases that are "capable of repetition, yet evading review." This exception permits federal courts to adjudicate cases that would otherwise be moot if two conditions are present: "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party will be subjected to the same action again." *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481 (1990) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam)).

With respect to the first prong of the exception, Memorial points to the limited time frame in which it could seek review of the 2004 plan amendment. CMS approved the 2004 plan amendment retroactively on December 21, 2004, approving the plan for the period from May 9, 2004 until June 30, 2005. Therefore, Memorial would only have the period between December 21 and June 30, approximately six months, in which to seek review before the plan amendment expired and all funds were distributed.

Although six months is a rather short period of time, Memorial's claim is not one that, by its nature, necessarily is incapable of review. In one sense, Memorial did act

promptly; it filed this action within two weeks of CMS' approval of the 2004 plan amendment. Memorial then sought expedited discovery; in its motion for such discovery, it stated that it would "seek a preliminary injunction at the appropriate time." R.11 at 2. Memorial therefore appeared to recognize that the case must move quickly; indeed, in requesting expedited discovery, it explicitly pointed out to the district court that "*[o]nce the funds are dispersed, it will be almost impossible to challenge the [2004 plan amendment], as all the funds will have been dispersed*." R.24 at 5 (emphasis in original).

Although Memorial recognized that a preliminary injunction could be sought in this case, it never actually requested such relief. If it had done so, judicial review well might have been possible before all of the funds were distributed. We have declined to determine that a controversy falls under the "capable of repetition, yet evading review" exception when it is the plaintiff's procedural missteps that prevent judicial review. *See Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 529 (7th Cir. 2001). In *Adamkus* we held that a claim does not fall under the "capable of repetition, yet evading review" standard, when the plaintiff failed to seek a preliminary injunction halting construction of a wastewater plant while disputing the award of the construction bid to build the plant. *Adamkus*, 781 F.2d at 602-03. We declined to "excuse [the plaintiff] from failing to take any action at any time during the year and a half when the plant was being built" to seek preliminary relief, *id.* at 603, and found that the "capable of repetition, yet evading review" excep-

tion was inapplicable, *id.* at 604.[4] Therefore, even though Memorial's claim "evaded review" in this case, the claim may not have evaded review had Memorial sought a preliminary injunction.

Memorial also has not established the second prong of this exception. There is no reasonable expectation that Memorial will be subjected to the same action in the next plan amendment. Our cases require that there must be a " 'reasonable expectation' or a 'demonstrable probability' that the same controversy will recur involving the same parties." *Holstein v. City of Chicago*, 29 F.3d 1145, 1148 (7th Cir. 1994) (quoting *Jones v. Sullivan*, 938 F.2d 801, 807 (7th Cir. 1991)). "The mere physical or theoretical possibility" of the injury being repeated "is insufficient to satisfy this prong." *Id.*

---

[4] A situation similar to this case was confronted in *Kansas Health Care Ass'n, Inc. v. Kansas Department of Social & Rehabilitation Services*, 794 F. Supp. 356 (D. Kan. 1992), when a group of Kansas nursing facilities filed suit alleging that a Medicaid state plan amendment was unlawful. The challenged plan amendments expired before judicial review was completed by the district court, but the nursing facilities argued that a pending plan amendment would harm them in ways similar to the then-expired plan amendments. *Id.* at 357-58.

The court held that the action was moot after the expiration of the contested plan amendments, stating that, if the court reached the merits, it "would be issuing an advisory opinion regarding State Plan Amendments which have not been challenged and are not now before the court." *Id.* at 359. The court declined to apply the "capable of repetition, yet evading review" exception because the plaintiffs could have gotten timely review of their claim had they followed proper procedures in seeking a preliminary injunction. *Id.*

In an attempt to meet this requirement, Memorial claims that the next plan amendment, which is now pending approval by CMS, also will injure it. Memorial claims that the new plan amendment "presents similar issues and controversies as complained of in the instant suit." Appellant's Br. at 19. However, at oral argument, Memorial indicated that the new plan is different from the 2004 plan amendment because it employs a different formula to calculate payments to hospitals. Nevertheless, Memorial continued to maintain that the new plan will injure it because the new plan also awards funds to the hospitals on a basis other than Medicaid utilization.

The record is devoid of any evidence about the details of the new plan amendment. In short, while it is clear that Memorial will be subject to a new plan amendment, it admits that the pending plan awards payments to hospitals in a different manner than the 2004 plan. It simply is unclear just how that plan amendment will impact Memorial. We have declined to apply the "capable of repetition, yet evading review" exception when the plaintiff "fail[s] to demonstrate that it necessarily will be subjected . . . to precisely the same treatment" that it received in the earlier controversy. *Worldwide Street Preachers' Fellowship v. Peterson*, 388 F.3d 555, 559 (7th Cir. 2004); *see also Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) (holding that "pure speculation" as to future injury is not sufficient to meet the exception to mootness). Here, Memorial has not established that it will even be injured by the pending plan amendment; it has admitted that it will not receive "precisely the same treatment" under the pending plan amendment as it did under the 2004 plan amendment. Therefore, we cannot apply the "capable of repetition, yet evading review" exception to the mootness doctrine.

## Conclusion

The district court properly decided that the case was moot and therefore beyond the limitations of its jurisdiction.[5] Accordingly, its judgment is affirmed.

AFFIRMED

A true Copy:

     Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

---

[5] Because we affirm the district court's determination that the case is moot, we need not decide whether Memorial had the requisite standing to maintain the action; nor do we express any view on the merits of Memorial's claims.

---