Fletcher Allen Health Care et. al. v. Dep't of Vermont Health Access, No. 212-4-13 Wncv (Toor, J. May 22, 2014).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
WASHINGTON UNIT
CIVIL DIVISION

| | |
|---|---|
| FLETCHER ALLEN HEALTH CARE, et al.,<br>  Appellants<br><br>v.<br><br>DEPARTMENT OF VERMONT<br>HEALTH ACCESS,<br>  Appellee | Docket No. 212-4-13 Wncv |

RULING ON APPEAL

This is a consolidated appeal by several Vermont hospitals (the Hospitals) from the fiscal year 2013 assessment of their health care provider tax by the Department of Vermont Health Access (DVHA).[1] The Hospitals argue that DVHA calculated the tax in a manner that violated Medicaid statutes and regulations and, separately, assessed it on income that is expressly excluded from the tax by Vermont statute. They seek refunds for their alleged overpayments.[2]

I. Medicaid Background

Basic familiarity with certain Medicaid statutes and regulations is necessary to understand the issues in this case. Medicaid is jointly funded by federal funds (federal financial participation) and state (nonfederal) funds. The amount of the federal participation depends on a formula, one component of which is how much nonfederal funds the state allocates to Medicaid

---

[1] The Hospitals include: Fletcher Allen Health Care, Inc.; Central Vermont Medical Center, Inc.; Southwestern Vermont Health Care; Northwestern Medical Center; Gifford Medical Center; North Country Hospital; Rutland Regional Medical Center; Grace Cottage Hospital; and Mt. Ascutney Hospital. Each hospital appealed its assessment administratively, raising the same issues. The Commissioner denied relief and each hospital appealed to the civil division of the superior court in the unit where the hospital is located. All of those appeals then were consolidated in the Washington Civil Division under Docket Number 212-4-13 Wncv.

[2] As this decision was being finalized, the court noted a May 13 letter seeking oral argument. Although it references a similar request made in March, the court does not see that in the file. Although the court generally grants such requests, the court is loath to delay this case further. Given the court's analysis of the issues, the court does not see how oral argument could be helpful here.

spending. In the 1980s and early 1990s, many states began to manipulate the formula to induce greater federal participation without effectively increasing nonfederal funding proportionately. This often was done with a tax on health care providers receiving Medicaid funding. *See* Protestant Memorial Medical Center, Inc. v. Maram, 471 F.3d 724, 726 (7th Cir. 2006). In short, a state could tax the Medicaid provider and allocate the proceeds to Medicaid, costing the state nothing but increasing federal participation. Congress responded by adopting the Medicaid Voluntary Contribution and Provider–Specific Tax Amendments of 1991, codified at 42 U.S.C. § 1396b(w).

The Amendments remove from the participation formula those revenues raised by state taxes having objectionable characteristics. 42 U.S.C. § 1396b(w)(1)(A). Revenues are excluded if they arise out of health care related taxes that are not broad-based and uniform, or are subject to a "hold harmless" provision. Id. § 1396b. The uniformity and hold harmless provisions are not at issue in this case.

A broad-based health care related tax is one "which is imposed with respect to a class of health care items or services . . . or with respect to providers of such items or services." Id. § 1396b(w)(3)(B). To be broad-based, it must be imposed on all items or services in the class or all providers in the class. Id. § 1396b(w)(3)(B)(i). The "separate" classes of items or services include, for example: inpatient hospital services; outpatient hospital services; nursing facility services; physicians' services; home health care services; outpatient prescription drugs; and others. 42 U.S.C. 1396b(w)(7)(A).

## II. Vermont's Hospital Tax

Just before Congress adopted the Medicaid Amendment, Vermont adopted certain health care provider taxes in legislation entitled, "An Act Establishing A Medicaid Service

2

Improvement." 1991, No. 94. Following the Medicaid Amendment, Vermont amended the state tax in legislation entitled, "An Act to Amend the Health Care Provider Tax Program to Meet Federal Requirements." 1991, No. 253 (Adj. Sess.). These statutes have been amended many times since. They currently are codified at 33 V.S.A. §§ 1950–1958 as Vermont's Health Care Improvement Program.

The commissioner of DVHA is instructed to "interpret and administer the provisions [of the Program] so as to maximize federal financial participation and avoid disallowances of federal financial participation." 33 V.S.A. § 1950(b). "If the purpose [of the Program] can no longer be accomplished, the Secretary of Human Services shall so notify the General Assembly on or before the following February 15." Id. § 1950(c).

The Program separately taxes hospitals, 33 V.S.A. § 1953, and several other health care providers. All revenues raised are deposited into the State Health Care Resources Fund, 33 V.S.A. § 1901d. 33 V.S.A. § 1956. The Fund funds Medicaid and other services. 33 V.S.A. § 1901d(a). Hospitals currently pay a 6% tax on "net patient revenues (less chronic, skilled, and swing bed revenues)." Id. § 1953(a)(1). "Net patient revenues" is a figure borrowed from the separate state hospital budget review process, now conducted by the Green Mountain Care Board. *See* 18 V.S.A. § 9375(b)(7); 2011, No. 45, § 24a (describing the process by which the figure is delivered to DVHA; never codified).

Three revenue streams for hospitals are excluded from the tax, those related to nursing homes, home health agencies, and a "physician's office practice." 33 V.S.A. § 1952(c). The program specifically defines and separately taxes nursing homes and home health agencies. "Physician's office practice" is neither defined nor taxed.

For fiscal year 2013, DVHA assessed each hospital's tax on the respective "net patient

3

revenues" figure, and did not deduct anything for "physician's office practice" income. Each hospital appealed administratively. 33 V.S.A. § 1958(a). Hearings were conducted by the commissioner personally and all appeals were denied.[3]

### III.  The Issues

The Hospitals' arguments to the commissioner are the same as those they advance here.[4] They argue that the hospital tax, as imposed, does not comply with Medicaid's broad-based requirement because, while it permissibly taxes revenues for inpatient and outpatient hospital services, it also *partially* reaches several other item and service classes, the most significant of which is physician services,[5] without taxing them wholly. According to them, the classes are discretely defined and mutually exclusive; there can be no overlap among them. They seek a recalculation of their taxes with revenues from all classes other than inpatient and outpatient hospital services omitted. They also argue that "physician's office practice," 33 V.S.A. § 1952(c), excludes from the tax all revenue from any physician services.

DVHA argues that the hospital tax conforms to Medicaid's broad-based provision because it extends to the entirety of two item or service classes, inpatient and outpatient hospital services. Because Vermont does not separately tax many of the other item or service classes (including physician services), it argues, it is proper to include revenue from those classes when it also falls under inpatient or outpatient hospital services. DVHA argues that the Hospitals lack

---

[3] Hearings before DVHA are exempt from contested case protections. 33 V.S.A. § 1958(a). The commissioner conducted them in an informal manner and counsel for DVHA largely made no adversarial presentation. The hearings consisted of little more than the submission of documents and argument by the Hospitals' attorneys (but not DVHA's attorney). The record on review is sparse at best. None of the hospitals have raised a formal objection to the process.

[4] The Hospitals advanced one argument, related to Disproportionate Share Hospitals, that they have not pursued on appeal.

[5] Others at issue include nursing services, physical therapy, occupational and speech therapy, and outpatient laboratory and radiology services.

standing to raise these matters because there is no indication that the federal regulators have or imminently are about to take any sort of enforcement action. DVHA attributes a limited meaning to "physician's office practice" and maintains that the Hospitals have no such revenue to exclude.

One of the underlying issues in this case is that the Hospitals have substantial revenue in their budgets generated by physicians that they directly or, in Fletcher Allen's case, indirectly employ, either in the hospital itself or in various practice settings outside of the hospital. DVHA's practice apparently has been to include all such revenue, no matter the practice setting, in the calculation of the hospital tax. For purposes of the broad-based requirement, it considers all such physician services outside of the hospital to be outpatient hospital services.

Nothing in the record indicates that the issues in this case ever were presented to DVHA or its predecessors before fiscal year 2013. The implication is that the tax has been calculated in the same manner all along. "Physician's office practice" revenues have been excluded from the tax, by statute, from the outset. *See* 33 V.S.A. § 2632(f) (1991). The record does not explain how the phrase has been interpreted in the past, whether the exclusion has ever been applied at all, or whether the hospitals have been paying the tax all along with physician office practice revenues included.

IV. Analysis

A. Standing

DVHA argues that the Hospitals lack standing to seek a refund based on a perceived violation of Medicaid's broad-based requirement because there is no evidence of any imminent threat that the federal regulator will take any regulatory action that could cause them any injury.

The issue in this case is whether DVHA is properly implementing the hospital tax

5

according to Vermont law. The Medicaid provisions do not require states to tax in any particular way or to tax at all. They merely prescribe the effect on federal financial participation if a tax has certain characteristics. Where the language of the state statute is plain, DVHA must follow it. Where the legislature has left room for DVHA to interpret the statutory language, the question is whether DVHA's interpretation is a permissible one. Tarrant v. Dep't of Taxes, 169 Vt. 189, 195 (1999). DVHA is instructed by statute to interpret the tax to avoid reductions in federal financial participation. 33 V.S.A. § 1950(b). Medicaid law is thus relevant to an inquiry into how DVHA has exercised its discretion. It is not, however, controlling.

If the Hospitals can show that DVHA is improperly applying state law in a manner that overtaxes them, they may be entitled to a refund. If they merely show that the hospital tax conflicts with the broad-based requirement, they would not be entitled to a refund.[6] The state hospital tax neither imports the language of the Medicaid provisions at issue nor authorizes DVHA to tax in any way that it believes complies with those federal provisions. DVHA is limited by the language of the hospital tax statutes. The substantive issue in this case is one of state law, not Medicaid law.

The Hospitals have standing to seek a refund on taxes they believe DVHA has improperly collected due to an incorrect interpretation of the hospital tax statutes.

## B. Net Patient Revenues

The tax at issue is imposed expressly on "net patient revenues (less chronic, skilled, and swing bed revenues)" with nursing home, home health agency, and physician's office practice

---

[6] If the hospital tax cannot be permissibly interpreted to avoid a conflict with the Medicaid provisions, the secretary of human services is instructed by statute to so inform the legislature. DVHA also could attempt to get a waiver, 42 C.F.R. § 433.68(c)(3), or litigate, 42 C.F.R. § 430.42. As long as DVHA is imposing the hospital tax in accord with state law, however, a conflict between state law and these Medicaid provisions would not somehow entitle the Hospitals to a refund of taxes properly collected.

revenues omitted.[7] 33 V.S.A. §§ 1952(c), 1953(a)(1). While the codified hospital tax statutes do not define "net patient revenues," the expression has a specific meaning in the budget review process from which it derives. That is the figure that DVHA uses to calculate the tax. 2011, No. 45, § 24a. Aside from the dispute over the meaning of "physician's office practice," the statutory language leaves little, if any, room for interpretation by DVHA.

It is not clear that a tax on net patient revenues conflicts with the broad-based requirement in any event. The dispute boils down to whether each item and service class must be applied narrowly to avoid overlap. The item or service categories are described as "separate." 42 U.S.C. § 1396b(w)(7)(A). There is no indication in the statute that "separate" necessarily means mutually exclusive or that the classes were intended to have the specific, inflexible meanings that the Hospitals advance. There is authority in support of DVHA's position. *See, e.g.*, Dep't of Health & Human Services, Dear State Medicaid Director letter 7 (June 21, 1995) (approving the inclusion of physician services under inpatient hospital services if physician services not otherwise taxed); 57 FR 55118-01, *55127 (approving a tax on a hospital's gross revenues). This makes sense because the federal purpose is to limit states' ability to manipulate the participation formula, not to authorize or bar any particular state tax. The Hospitals' argument that the classes are mutually exclusive and must be construed according to the Vermont State Plan Amendment, reimbursement rules, or billing guidelines is not persuasive. The court finds it clear that a tax may be assessed on providers, as opposed to services. 42 U.S.C. § 1396b(w)(3)(B)(i). Nothing in Vermont law, which is what controls here, requires use of Medicaid billing categories. DVHA's analysis with regard to the issue of what is meant by "broad-based" is reasonable.

---

[7] The parties have not explained the meaning of "chronic, skilled and swing bed revenue," but that exclusion is not at issue here.

## C. Physician's Office Practice

The remaining issue is whether DVHA has interpreted "physician's office practice" permissibly. A figure for "physician's office practice" evidently does not arise in the budget review process. It is not defined in the hospital tax statutes or by rule. The Hospitals argued to the commissioner that it refers to *all* physician services producing revenues for the Hospitals. The commissioner rejected that and responded by saying that (1) it would make no sense to exclude all physician services from the tax because it would mean the tax would not be "broad-based" and (2) "[i]t is plausible that the legislature could have intended to exclude physician's office practices that were subsidiaries of hospitals or otherwise maintained through a corporate structure," but that there were no such offices at issue because here "all physician revenues are generated from employed physicians with the same tax identification numbers." Letter from Mark Larson to Claudio Fort (Feb. 25, 2013). DVHA's first point goes to the application of Medicaid definitions, the issue addressed above. Its second point goes to the interpretation of the Vermont statute and what it means by "physician's office practice."

On appeal, DVHA's position on the expression has continued to evolve. At this point, DVHA claims that "physician's office practice" refers to "(1) a group of physicians that is not employed by a hospital; (2) that bills and collects for their services using their own taxpayer identification number, rather than that of a hospital; and (3) that is organized in a separate legal entity from a hospital." DVHA's Sur-Reply 8 (filed Mar. 7, 2014). In other words, "physician's office practice" refers to revenues for physician services that belong to an entity other than the hospital being taxed.

The statute at issue provides: "The budget of any hospital assessed under the provisions of this subchapter that includes a nursing home, home health agency, or physician's office

8

practice shall have its assessment based only on the hospital portion of its budget." 33 V.S.A. § 1952(c). A physician's office practice in this context must be something, like a nursing home or home health agency, that the hospital would own or have an affiliation with such that its revenues would be in the hospital's budget. DVHA's interpretation does not explain how revenues from an entirely separate entity would be in the hospital budget in the first place to then be excluded. Instead, its interpretation appears to render the entire exclusion a nullity. The Hospitals' interpretation, on the other hand, is overbroad. Any hospital, regardless whether it includes an office practice, will have revenues generated by physicians. *Office practice* revenues are at issue, not *all* physician-related revenues.

The court can only speculate that the legislature in 1991 was attempting to describe a physician practice in the community that was somehow owned by or affiliated with a hospital such that its revenues appeared in the hospital budget. The tax, after all, is on hospitals. "Hospital" is defined as "a place devoted primarily to the maintenance and operation of diagnostic and therapeutic facilities *for in-patient medical or surgical care*." 18 V.S.A. § 1902(1) (emphasis added); 33 V.S.A. § 1951(7) (defining "hospital" for purposes of the hospital tax by reference to 18 V.S.A. § 1902(1)). That this definition, for tax purposes, may be outdated now as hospitals have expanded their reach into the community may be at the crux of the dispute here, but interpretation of the statute requires some analysis of what the legislature likely was thinking in 1991 (when excluding office practice revenues from the tax presumably would have had a far smaller impact on tax revenues). The problem for the court is that the record here offers the court little assistance in analyzing this question.

Although "[t]he judiciary is the final authority on issues of statutory construction," courts are generally required to defer to reasonable agency interpretations of their own statutes.

9

Levine v. Wyeth, 2006 VT 107, ¶ 31, 183 Vt. 76 (quoting Chevron, U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 843 n. 9 (1984)); In re Soon Kwon, 2011 VT 26, ¶ 9, 189 Vt. 598. "[W]here a statute is silent or ambiguous regarding a particular matter this Court will defer to agency interpretation of a statute within its area of expertise as long as it represents a permissible construction of the statute." In re Smith,169 Vt. 162, 169 (1999). "The fundamental objective of statutory interpretation is to discern and implement the legislative intent, and in seeking that intent we look to the words of the statute itself, the legislative history and circumstances surrounding its enactment, and the legislative policy it was designed to implement." Perry v. Medical Practice Board, 169 Vt. 399, 406 (1999) (citation omitted).

The term "physician's office practice" in the statute at issue here is undefined, and none of the parties has offered any statutory, regulatory, or case law source for a definition. Nor has DVHA offered any reasoned definition of its own beyond speculating as to what the legislature may have meant. No analysis is provided to support that speculation. For example, no evidence is provided to explain what the facts on the ground were in 1991 when the legislature inserted the exclusion, or how the exclusion has been interpreted since 1991. There is no factual record with regard to whether hospitals ever owned physicians' practices back in 1991, and if so in what manner; why those practices would have been part of hospital budgets to begin with; or why the legislature would have excluded them. There is no evidence that, as DVHA theorizes, there may be some category of income that hospitals receive – or in the past received – from independent physicians' offices. No legislative history has been provided. No one has offered any information about whether other states have used similar exclusions, and if so, how they have been interpreted. DVHA just does not offer the court a basis on which to determine whether its interpretation of the statute is or is not reasonable.

10

The court cannot defer to an agency interpretation that is so lacking in support. The court needs sufficient information to analyze whether an agency's interpretation is reasonable. Courts defer to an administrative agency's conclusions of law when they are "rationally derived from the findings and based on a correct interpretation of the law." Office of Professional Regulation v. McElroy, 2003 VT 31, ¶ 7, 175 Vt. 507 (citation omitted). Where an agency "simply did not make the findings required to support its actions," a court is not bound to defer to the agency decision. Turnley v. Town of Vernon, 2013 VT 42, ¶ 12; *see also*, Slocum v. Department of Social Welfare, 154 Vt. 474, 482 (1990) (rejecting agency interpretation of its own regulation where its interpretation "has proven to be something less than illuminating" and "markedly incomplete"). Deference to an agency's interpretation "is not accorded merely because the statute is ambiguous and an administrative official is involved." Gonzales v. Oregon, 546 U.S. 243, 258 (2006). Courts "do not defer to the agency's conclusory or unsupported suppositions." McDonnell Douglas Corp. v. U.S. Dep't of the Air Force, 375 F. 3d 1182, 1187 (D.C. Cir. 2004).

Nor is this a case in which the correct answer is so obvious that the court can determine from the record before it that a different interpretation is correct. The court rejects the alternative interpretation offered by the Hospitals, and has no basis on which to reach another interpretation. In these circumstances, remand is the appropriate remedy. Town of Victory v. State, 2004 VT 110, ¶ 24, 177 Vt. 383 (where court found property valuation methodology "fundamentally flawed," court "should have remanded the matter back to PVR to determine the valuation anew after correcting the flaws the court found"); Peter Pan Bus Lines, Inc. v. Federal Motor Carrier Safety Admin., 471 F. 3d 1350, 1354 (D.C. Cir. 2006) (remand appropriate so that agency may "interpret the statutory language anew.") .

11

## Order

The court rejects the Hospitals' claims (1) that DVHA's interpretation of the state hospital tax violates Medicaid provisions, (2) that the tax on inpatient and outpatient hospital services cannot include physicians' services (or the other disputed services), and (3) that the statutory exclusion for "physician's office practices" excludes all physicians' services. However, the court rejects DVHA's interpretation of "physician office practice" as lacking any factual support or reasoned analysis. The commissioner's decision is therefore affirmed in part and reversed in part, and remanded to DVHA for reconsideration of the meaning of "physician's office practice," 33 V.S.A. § 1952(c). The commissioner may hold additional hearings to take evidence if necessary.

Dated at Montpelier this 22nd day of May 2014.

_____
Helen M. Toor
Superior Court Judge