# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued November 9, 2006　　　Decided December 19, 2006

No. 05-1436

PETER PAN BUS LINES, INC. AND
BONANZA ACQUISITION, LLC,
PETITIONERS

v.

FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION,
RESPONDENT

---

On Petition for Review of an Order of the
Federal Motor Carrier Safety Administration

---

*Jeremy Kahn* argued the cause for the petitioners.

*Kathy L. Krieger*, *Craig M. Cibak* and *Richard P. Schweitzer* were on the joint brief for *amici curiae* American Bus Association, Inc. and Amalgamated Transit Union in support of petitioners.

*Robert D. Kamenshine*, Attorney, United States Department of Justice, argued the cause for the respondent. *Peter D. Keisler*, Assistant Attorney General, *Robert S. Greenspan*, Attorney, United States Department of Justice, *Paul M. Geier*, Assistant General Counsel, and *Mary F. Withum*, Senior Trial Attorney, United States Department of Transportation, were on brief.

Before: HENDERSON, TATEL and GRIFFITH, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

Concurring opinion filed by *Circuit Judge* TATEL.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Peter Pan Bus Lines, Inc. and its subsidiary Bonanza Acquisition, LLC (collectively, Peter Pan) seek review of a decision of the Federal Motor Carrier Safety Administration (FMCSA), an entity within the Department of Transportation (DOT). The challenged decision rejected Peter Pan's protest of an FMCSA decision authorizing Fung Wah Transportation, Inc. (Fung Wah) to operate regular-route passenger transportation between Boston and New York City. Peter Pan protested Fung Wah's certification application on the ground that Fung Wah was unwilling or unable to comply with the requirements of the regulations DOT has promulgated under the Americans With Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.* The FMCSA concluded that the language of 49 U.S.C. § 13902, which authorizes the FMCSA to make compliance findings and issue certificates registering motor carriers, prevents the FMCSA from considering whether a certificate applicant is in compliance with DOT's ADA regulations. Because the FMCSA premised its construction on the plain language of the statute, which it treated as unambiguous, and because we find that the statutory language is in fact ambiguous, we vacate the FMCSA's decision and remand for it to interpret the statute accordingly.

## I.

On April 4, 2005 Fung Wah filed an application for motor passenger carrier authority to operate a passenger bus line between Boston and New York City. On May 4, 2005 Peter Pan submitted a protest under 49 C.F.R. § 365.203 based on Fung Wah's "asserted unwillingness and/or inability to comply with regulations of the Secretary implementing the [ADA]." Joint App. (JA) 15. The FMCSA's licensing team, however, granted

Fung Wah a certificate as requested on May 12, 2005, apparently unaware of Peter Pan's protest.

On May 16, 2005 Peter Pan filed a motion for rehearing, asking that the FMCSA "immediately vacate the award of its certificate to applicant and then render a decision on the merits only after first taking into account protestants' serious allegations regarding fitness" and, "in particular, applicant's demonstrated failure to meet its obligations under the Americans With Disabilities Act to assure the availability of transportation for all members of our society." JA 49, 48. On October 26, 2005 the FMCSA issued a decision denying rehearing on the ground that section 13902(a)(1) "does not permit FMCSA to withhold registration for failure to comply with ADA requirements." *Fung Wah Bus Transp., Inc.*, No. MC-405969 (Oct. 26, 2005) (FMCSA Dec.), *reprinted in* JA at 58, at 3. Section 13902(a)(1), enacted as part of the Interstate Commerce Commission Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803 (1995), (ICCTA) provides:

**(a) Motor carrier generally.—**

   **(1) In general**.—Except as provided in this section, the Secretary shall register a person to provide transportation subject to jurisdiction under subchapter I of chapter 135 of this title as a motor carrier if the Secretary finds that the person is willing and able to comply with—

      **(A)** this part and the applicable regulations of the Secretary [of Transportation] and the [Surface Transportation] Board;

      **(B)(i)** any safety regulations imposed by the Secretary;

**(ii)** the duties of employers and employees established by the Secretary under section 31135; and

**(iii)** the safety fitness requirements established by the Secretary under section 31144; and

**(C)** the minimum financial responsibility requirements established by the Secretary pursuant to sections 13906 and 31138.

49 U.S.C. § 13902(a)(1).[1]  The FMCSA determined that the phrase "applicable regulations" in subsection (a)(1)(A) modifies the preceding phrase "this part," which refers to "title 49, subtitle IV, Part B, which consists of statutory authority transferred from the [ICC] to the Secretary of Transportation and the Surface Transportation Board following enactment of the ICCTA." FMCSA Dec. at 2. The FMCSA then concluded that it is without authority to enforce compliance with DOT's ADA regulations in the certification process because the ADA regulations were not promulgated pursuant to Part B and do not fit in any of the categories identified in subsections (a)(1)(B) or (a)(1)(C).  FMCSA Dec. at 2.

On November 21, 2005 Peter Pan filed a petition for review challenging the FMCSA's construction of section 13902(a)(1).

---

[1]The statute was amended during the certification proceeding to add the language in subsection (a)(1)(B)(ii), which did not appear in the version the FMCSA quoted in its rehearing decision.  Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users, § 4113(b), Pub. L. No. 109-59, 119 Stat. 1144, 1725 (2005). The new language affects neither the FMCSA's decision nor Peter Pan's challenge.

**II.**

Because this appeal involves the FMCSA's "interpretation of a statute the agency is charged with implementing, we apply the two-part test of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)." *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 374 F.3d 1251, 1257 (D.C. Cir. 2004) (parallel citation omitted). "[U]nder the *Chevron* two-step, we stop the music at step one if the Congress 'has directly spoken to the precise question at issue' because we—and the agency—'must give effect to [its] unambiguously expressed intent.' " *Northpoint Tech., Ltd. v. FCC*, 412 F.3d 145, 151 (D.C. Cir. 2005) (quoting *Chevron*, 467 U.S. at 842-43). "But if the statute is silent or ambiguous, we dance on and, at step two, defer to the Commission's interpretation if it is 'based on a permissible construction of the statute.' " *Id.* (quoting *Chevron*, 467 U.S. at 843). The text of the FMCSA's decision certifying Fung Wah makes clear that the Agency construed section 13902(a)(1) as an unambiguous expression of the Congress's intent, thereby triggering review under *Chevron* step 1.

In rejecting Peter Pan's argument that the phrase "applicable regulations of the Secretary" refers to all of DOT's regulations that are applicable to motor carriers, including its ADA regulations, the FMCSA unequivocally declared: "This interpretation is *not consistent with the plain language of the statute and the legislative history* of the [ICCTA], which enacted section 13902 into law. The term 'applicable regulations of the Secretary' is *clearly meant* to modify the term 'this part.' " FMCSA Dec. at 2 (emphasis added). Thus, the FMCSA concluded, section 13902(a)(1) "*does not permit* FMCSA to withhold registration for failure to comply with ADA requirements." *Id*. at 3 (emphasis added). To the contrary, we find the text of the statute to be ambiguous.

The FMCSA rejected Peter Pan's interpretation in part because "if 'applicable regulations of the Secretary' included all DOT regulations applicable to motor carriers, sections 13902(a)(1)(B) and (C) would be superfluous, since FMCSA regulations governing safety and financial responsibility would fall within section 13902(a)(1)(A)." FMCSA Dec. at 2. The FMCSA's reading of "applicable regulations of the Secretary," however—to include only regulations applicable to Part B of Subtitle IV—itself renders superfluous the reference in section 13902(a)(1)(C) to "minimum financial responsibility requirements established by the Secretary pursuant to section[] 13906" because section 13906 is codified in Part B and financial requirements established pursuant to it are therefore already included under section 13902(a)(1)(A).[2] Thus, section 13902 contains surplusage under either reading and, as a result, we cannot say that either proffered construction reflects the Congress's unambiguously expressed intent. *Cf. NLRB v. FLRA*, 952 F.2d 523, 532 (D.C. Cir. 1992) ("[p]etitioners *cannot* plausibly make a *Chevron* step one argument" to support interpretation that makes other statutory language "surplusage") (emphasis in original). We therefore cannot uphold the FMCSA's interpretation under step 1 of *Chevron*. Nor may we review it under step 2.

In *PDK Laboratories, Inc. v. DEA*, 362 F.3d 786 (D.C. Cir. 2004), we recently affirmed a line of circuit decisions which hold that "deference to an agency's interpretation of a statute is not appropriate when the agency wrongly 'believes that interpretation is compelled by Congress.' " 362 F.3d at 798 (quoting *Arizona v. Thompson*, 281 F.3d 248, 254 (D.C. Cir.

---

[2]While "requirements" is not synonymous with "regulations" used in subsection (a)(1)(A), the FMCSA in fact established minimum levels of financial responsibility for passenger motor carriers by regulation. *See* 49 C.F.R. pt. 387, subpt. B.

2002)); (citing *ITT Indus., Inc. v. NLRB*, 251 F.3d 995, 1004 (D.C. Cir. 2001); *Transitional Hosps. Corp. v. Shalala*, 222 F.3d 1019, 1028-29 (D.C. Cir. 2000); *Alarm Indus. Commc'ns Comm. v. FCC*, 131 F.3d 1066, 1072 (D.C. Cir. 1997)); *see also Teva Pharms. USA, Inc. v. FDA*, 441 F.3d 1, 4-5 (D.C. Cir. 2006); *Prill v. NLRB*, 755 F.2d 941, 956-57 (D.C. Cir. 1985). As we explained in *PDK*, *Chevron* step 2 deference is reserved for those instances when an agency recognizes that the Congress's intent is not plain from the statute's face. "In precisely those kinds of cases, it is incumbent upon the agency not to rest simply on its parsing of the statutory language"—"[i]t must bring its experience and expertise to bear in light of competing interests at stake." *PDK*, 362 F.3d at 797-98 (citing *Chevron*, 467 U.S. at 865-66) (footnote omitted). "When it does so it is entitled to deference, so long as its reading of the statute is reasonable." *Id*. at 798. But here, as in *PDK Labs*, the Agency has not done so and "at this stage it is not for the court 'to choose between competing meanings.' " *Id*. (quoting *Alarm Indus. Commc'ns Comm.,* 131 F.3d at 1072) (citing *Prill*, 755 F.2d at 956-57; *Transitional Hosps. Corp.*, 222 F.3d at 1028-29; *ITT Indus., Inc.*, 251 F.3d at 1004; *Arizona v. Thompson*, 281 F.3d at 254). We must therefore remand for the FMCSA to interpret the statutory language anew. *See id*. ("The law of this circuit requires in those circumstances that we withhold *Chevron* deference and remand to the agency so that it can fill in the gap.").[3]

---

[3]In this case, unlike *PDK*, the Agency expressly requested *Chevron* deference. *Compare* Resp't's Br. at 18 (invoking *Chevron* and stating " '[u]nless the statute resolves the issue, [the Court] must uphold the [FMCSA] so long as its interpretation is reasonable' " (quoting *Safe Food & Fertilizer v. EPA,* 350 F.3d 1263, 1268 (D.C. Cir. 2003) (alterations in original))), *with PDK Labs*, 362 F.3d at 794 ("DEA neither invokes *Chevron* . . . nor asks us to give any special deference to the Deputy Administrator's judgment about the meaning

For the foregoing reasons, the decision of the FMCSA is vacated and the case is remanded to the FMCSA to fill the gap in section 13902(a)(1) by interpreting the ambiguous term "applicable" in subsection (a)(1)(A), taking into account the particular statutes and regulations that are enumerated in subsections (a)(1)(B) and (a)(1)(C).  In so ruling, we express no opinion on whether the construction of section 13902(a)(1) the FMCSA now advances is permissible under *Chevron* step 2.

*So ordered*.

---

of the provision.") (ellipsis added).  We find this distinction of no significance because it is "[t]he expertise of the agency, not its lawyers," that "must be brought to bear on this issue in the first instance." *Pub. Citizen v. FMCSA*, 374 F.3d 1209, 1218 (D.C. Cir. 2004) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)).

TATEL, *Circuit Judge, concurring*: I agree with my colleagues that section 13902 is not so clear as to allow us to rule for the FMCSA under *Chevron* step one. I also agree that because FMCSA acted under a mistaken belief that the statute compelled the result it reached we must remand before moving on to *Chevron* step two. I write separately to set forth my serious doubts regarding the reasonableness of FMCSA's principal justification for declining to review bus company ADA compliance during the registration process.

In its brief, FMCSA explains that denying Fung Wah the registration it seeks "hardly is in the public interest even if Fung Wah has serious ADA-problems that must be rectified." Resp't's Br. 32. Amplifying this point at oral argument, FMCSA counsel told us that even if an applicant carrier declared its intention to provide low-cost service by operating buses without wheel-chair lifts, the agency would register that company, leaving it to the Department of Justice to investigate. Oral Arg. at 30:49. FMCSA's position is puzzling given that Congress, having enacted the statute to keep motor carriers off the road until they demonstrate they are willing and able to follow the law, must have understood that this requirement would lead to temporary sacrifices of competition. FMCSA's argument, therefore, must rest on the proposition that, unlike the interests protected by "the applicable regulations of the Secretary," the interests of the disabled are so unimportant that they must yield to the interest in competition. If the "applicable regulations of the Secretary" consisted only of safety regulations, then perhaps FMCSA's interpretation would represent a plausible understanding of congressional intent. But the regulations promulgated under Part B – which FMCSA concedes it must consider – go beyond safety to address, among other things, financial responsibility, 49 C.F.R. § 387, race discrimination, 49 C.F.R. § 374.101, .105, and less weighty interests such as noise emissions, 49 C.F.R §§ 325.1-325.93, radar detectors, 49 C.F.R § 392.71, and records storage, 49 C.F.R § 379.5.

Absent a satisfactory explanation for why the interests protected by the Americans with Disabilities Act are less important than the interests protected by these other regulations, I doubt very much that FMCSA's justification could survive *Chevron* step two.